# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE, )
)
    v. ) I.D. No. 2105008322
)
MAURICIO HERNANDEZ- )
MARTINEZ, )
)
    Defendant. )

## MEMORANDUM OPINION

Submitted: April 25, 2023
Decided: May 3, 2023

*Upon Consideration of Defendant's Motion to Withdraw Guilty Pleas-After Remand,*
**DENIED.**

Kevin A. Gardner, Esq., Deputy Attorney General, Department of Justice, Georgetown, Delaware, *Attorney for the State of Delaware.*

Edward C. Gill, Esq., Law Office of Edward C. Gill, P.A., Georgetown, Delaware, *Attorney for Defendant.*

**CONNER, J.**

**INTRODUCTION**

Mauricio Hernandez-Martinez's ("Defendant") Motion to Withdraw Guilty Pleas (the "Motion") arises from his October 4, 2021, guilty pleas to Operating a Motor Vehicle Causing Death and Leaving the Scene of a Collision Resulting in Death. Defendant filed the Motion on November 22, 2021. Upon hearing the testimony of Andrew Whitehead, Esq. on remand and reviewing the parties' submissions, Defendant's Motion to Withdraw Guilty Pleas is again **DENIED.**

**FACTUAL AND PROCEDURAL HISTORY**

On November 7, 2020, police were dispatched to a hit and run collision. When police officers arrived on scene they found Robert Root (the "victim"). The victim had been struck by a car while walking along East Trap Pond Road in Georgetown, Delaware. The victim died as a result of his injuries.

Police officers interviewed two eyewitnesses to the collision.[1] The witnesses stated they observed a white sedan, what they thought to be a Nissan Altima, pass them at a high rate of speed. After passing them, the sedan struck the victim who was walking eastbound in the westbound lane. The operator of the white sedan did not stop after striking the victim.

---

[1] The collision was also captured on the witness' dash camera.

Investigating police officers discovered numerous pieces of the white sedan left behind at the scene of the accident due to the collision. Among the pieces was part of the white sedan's mirror, which enabled police to narrow their search to a 2008 to 2013 white Nissan Altima.

On November 9, 2020, Defendant went to see Andrew Whitehead, Esquire.[2] Mr. Whitehead provided a translator for the meeting. Mr. Whitehead testified that he advises clients of immigration ramifications as a matter of course during initial consultations.[3] Further, Mr. Whitehead testified that it is his practice to advise clients with possible immigration issues to consult an immigration attorney.[4] Mr. Whitehead also testified that before a police interview is conducted it is his practice to advise the client of their fifth amendment rights.[5] Although he had no specific recollection and his notes do not reflect he had these conversations with Defendant, Mr. Whitehead was clear that these things are routinely discussed with his clients.[6]

Mr. Whitehead explained that Defendant was adamant about wanting to take responsibility for the collision at this first meeting.[7] Defendant's desire did not waiver despite Mr. Whitehead advising Defendant he had no duty to talk with the

---

[2] Tr. of Evidentiary Hr'g at 8:3-9.
[3] *Id.* at 16:6-19, 17:4-16.
[4] *Id.* at 17:4-16, 18:10-17, 21:9-23, 43:16-21.
[5] *Id.* at 18:18-23, 19:1-15.
[6] *Id.* at 16:6-19, 17:4-16, 18:10-17, 19: 1-15, 21:9-23, 43:16-21.
[7] *Id.* at 20:1-14.

police and could simply leave his office, potentially not incurring criminal charges.[8] Mr. Whitehead explained Defendant wanted to take responsibility for the incident in order to protect his family member who owned the car.[9] When Defendant made it clear that he needed to take responsibility, Mr. Whitehead discussed the strategies and benefits to early acceptance of responsibility by meeting with the police.[10] Mr. Whitehead further testified that he advised Defendant they could argue early acceptance of responsibility as a mitigating factor.[11]

Mr. Whitehead then contacted Detective Argo on November 9, 2020, and indicated that Defendant, his client, wanted to turn himself in regarding a hit and run.[12] Detective Argo interviewed Defendant on November 11, 2020.[13] During the interview, Defendant admitted to driving the white Nissan Altima that was involved in the collision. Defendant also stated his cousin, Carlos Hernandez was in the car at the time of the collision. During this interview Defendant told Detective Argo that he returned to the scene of the collision that night but did not make contact with the police officers that were there. Defendant stated he saw a news story regarding the collision and wanted to contact the police to do the right thing.

---

[8] *Id.* at 20:22-23, 21:1-6, 22:15-23, 23:1-10.
[9] *Id.* at 21:1-6, 23:1-10, 41:6-16.
[10] *Id.* at 24:20-23, 25:1-4.
[11] *Id.* at 34:2-18, 45:4-23, 53:19-21.
[12] *Id.* at 41:23, 42:1-23.
[13] *Id.*

Detective Argo also interviewed Carlos Hernandez. Hernandez corroborated all of Defendant's statements. Hernandez stated Defendant was driving the car, returned to the scene of the collision, and turned himself in after seeing the news story.

Defendant was indicted by the Grand Jury on May 25, 2021. Prior to the entry of the plea, Mr. Whitehead testified he spoke with Defendant at least three times by phone and met with him once more in the office.[14] Defendant entered guilty pleas to Operating a Motor Vehicle Causing Death and Leaving the Scene of a Collision Resulting in Death on October 4, 2021 and a pre-sentence report was ordered. A substitution of counsel occurred on November 18, 2021, where Edward Gill, Esq. entered his appearance on behalf of Defendant. Defendant filed the pending motion on November 22, 2021. The State filed a response to Defendant's Motion on December 13, 2021.

On February 11, 2022, this Court heard oral argument on Defendant's motion. During argument Mr. Gill requested that Defendant and his brother testify. The State objected, arguing that testimony was not necessary, but if allowed, the testimony of Mr. Whitehead would also be needed. At the conclusion of the argument the Court orally ordered the parties to submit supplemental briefing

---

[14] *Id.* at 32:4-9.

regarding the issue of whether an evidentiary hearing was necessary. Defendant submitted his supplemental brief on February 17, 2022, and the State responded on February 24, 2022. After reviewing the parties' submissions this Court sent a letter to counsel on April 6, 2022, stating an evidentiary hearing was not required.

On May 20, 2022, this Court denied Defendant's Motion and proceeded to sentencing. Defendant directly appealed to the Delaware Supreme Court on May 26, 2022, amending his appeal to add correct names and addresses on June 2, 2022. On September 1, 2022, the Supreme Court ordered this Court to conduct an evidentiary hearing staying Defendant's appeal. The evidentiary hearing was held on March 27, 2023.[15] Curiously, Mr. Gill changed course and did not solicit testimony from his client or his brother who were available in the court room. Mr. Whitehead was the only witness who testified at the remand hearing.

**DEFENDANT'S CLAIMS**

Defendant makes several claims as to why he should be permitted to withdraw his guilty pleas. First, Defendant argues the Truth-In-Sentencing Guilty Plea Form (the "TIS Form") contained two mistakes. Defendant's second claim is that the indictment was defective. Third, Defendant claims his prior counsel, Mr. Whitehead, was ineffective. Fourth, Defendant argues there is evidence that would prove his

---

[15] The evidentiary hearing was originally scheduled for October 28, 2022, but had to be postponed due to defense counsel's health issues.

innocence. Lastly, Defendant argues the State would not be prejudiced if the Motion was granted.

## STANDARD OF REVIEW

Motions to withdraw guilty pleas are within the sound discretion of this Court.[16] The Court may allow a defendant to withdraw a guilty plea upon a showing of any fair and just reason.[17] When determining whether a fair and just reason exists, the Court weighs five factors:

(1) Was there a procedural defect in taking the plea;

(2) Did the defendant knowingly and voluntarily consent to the plea agreement;

(3) Does the defendant presently have a basis to assert legal innocence;

(4) Did the defendant have adequate legal counsel during the proceedings; and

(5) Does granting the motion prejudice the State or unduly inconvenience the Court?[18]

These factors are not balanced, instead some of the factors alone may justify relief.[19] A defendant's statements to this Court during a plea colloquy are presumed to be

---

[16] *Brown v. State*, 250 A.2d 503, 504 (Del. 1969).
[17] Super. Ct. Crim. R. 32(d).
[18] *Scarborough v. State*, 938 A.2d 644, 649 (Del. 2007).
[19] *Id.*

truthful.[20] If this Court were to determine that the plea was not voluntarily entered or was entered because of a mistake on behalf of the defendant regarding their legal rights, then a request to withdraw a guilty plea may be granted.[21] The burden is placed on the defendant to prove that the plea was not entered voluntarily.[22]

## ANALYSIS

I.   Procedural Defect

Defendant argues that both the TIS Form and Indictment are defective. Defendant is correct. The TIS Form and plea colloquy stated the maximum incarceration time Defendant faced was three years and six months at Level V. The charges Defendant pled guilty to actually carry the potential maximum incarceration time of four years and six months at Level V.

Mr. Whitehead testified that before the plea hearing he advised Defendant the maximum penalty for the two charges was four years and six months at level 5.[23] Additionally, on the TIS Form the correct penalties were noted next to the charge but an error occurred when the two penalties were added.[24]

---

[20] *Somerville v. State*, 703 A.2d 629, 632 (Del. 1997).
[21] *Scarborough*, 938 A.2d at 650.
[22] *Somerville*, 703 A.2d at 632.
[23] Tr. of Evidentiary Hr'g at 27:17-23, 28:1-23, 47:11-23, 48:1-5, 48:12-23, 49:1-10, 54:20-23, 55:1-9, 55:15-20.
[24] *Id.*

7

In *Smith v. State*, the defendant was sentenced to the statutory maximum of twenty-five years even though the plea form stated the maximum was twenty years.[25] On remand, the defendant's sentence was reduced to twenty years to match what the guilty plea form stated.[26] The Supreme Court held the sentence being corrected resolved any error and no prejudice occurred to the defendant.[27]

Here, Defendant was sentenced to less time than what was stated on the TIS Form and in the plea colloquy. Due to this, the defect was cured. Defendant was not prejudiced in any way by being sentenced to less time than both the maximum mandatory time and time stated on the TIS Form. In fact, Defendant benefited from the error.

Defendant is also correct regarding the defective Indictment. Defendant argues he could not be charged with a violation of 21 *Del. C.* § 4176A(a) without also being charged with another motor vehicle code violation.[28] Even though a procedural defect existed, Defendant waived it. Guilty pleas act as waivers to pre-

---

[25] *Smith v. State*, 89 A.3d 478, 2014 WL 1017277, at *3 (Del. Mar. 13, 2014) (TABLE).
[26] *Id.*
[27] *Id.*
[28] The violation of another motor vehicle code section does not include a violation of 21 *Del. C.* § 4177.

plea defects.[29] The Supreme Court has stated any defects in indictments are waived when a defendant pleads guilty.[30]

## II.    Knowingly & Voluntarily Consent to Plea

On October 4, 2021, Defendant signed the TIS Form and Plea Agreement. Defendant's plea was made knowingly and voluntarily. First, during the plea colloquy, Mr. Whitehead told the Court he had gone over the forms line by line with Defendant.[31] Mr. Whitehead stated he was satisfied that Defendant understood the contents of the forms and of the rights being given up by pleading guilty.[32] Defendant was assisted by an interpreter during all proceedings. A thorough plea colloquy was conducted with Defendant in part as follows:

> **THE COURT:** Did you hear everything your attorney, Mr. Whitehead, told me?
>
> **DEFENDANT:** Yes.
>
> **THE COURT:** Do you have any questions about anything Mr. Whitehead told me about your proposed plea?
>
> **DEFENDANT:** No.

---

[29] *State v. Bonaparte*, 2012 WL 6945113, at *2 (Del. Super. Sept. 17, 2012).
[30] *See Oliver v. State*, 788 A.2d 528 (Del. 2001) (TABLE).
[31] Tr. of Plea Colloquy at 3:5-7.
[32] *Id.* at 3:8-15.

\*\*\*

**THE COURT:** Okay. Do you have the plea documents in front of you?

**DEFENDANT:** Yes.

**THE COURT:** The plea, as Mr. Whitehead outlined, calls you to plead guilty to a charge of operating a motor vehicle causing death and leaving the scene of a collision resulting in death. Do you understand the two charges that you are pleading guilty to?

**DEFENDANT:** Yes.

**THE COURT:** Do you understand that you are not going to be sentenced today? Rather, there is going to be an investigation done, and you will come back later for sentencing.

**DEFENDANT:** Yes.

**THE COURT:** And do you also understand that there's at least mandatory jail time that you face, and therefore, you will be taken into custody today?

**DEFENDANT:** Yes.

**THE COURT:** And also pursuant to the plea agreement, the State will be making other recommendations including restitution, a fine. Do you

10

understand that there will be other things that the State will recommend at the time of your sentencing?

**DEFENDANT:** Yes.

**THE COURT:** And Mr. Whitehead will be present to represent you during sentencing. Do you understand that?

**DEFENDANT:** Yes.

**THE COURT:** The truth-in-sentencing guilty plea form, sir, is the form with all the questions on it.

**DEFENDANT:** Yes.

**THE COURT:** Did you go over those questions with Mr. Whitehead?

**DEFENDANT:** Yes.

**THE COURT:** When you provided the answers, were your answers truthful?

**DEFENDANT:** Yes.

**THE COURT:** Do you understand by pleading guilty today there will be no trial in this case?

**DEFENDANT:** Yes.

**THE COURT:** And, therefore, you give up trial rights that are listed on one through seven on that form?

**DEFENDANT:** Yes.

**THE COURT:** Did you go over each and every one of those trial rights with Mr. Whitehead?

**DEFENDANT:** Yes.

**THE COURT:** Did you understand them?

**DEFENDANT:** Yes.

**THE COURT:** And, again, do you understand you waive those rights by pleading guilty today?

**DEFENDANT:** Yes.

***

**THE COURT:** Sir, the charge reads: On November 7th of last year, 2020, here in Sussex County, State of Delaware, while in the course of driving a motor vehicle, you did cause the death of Robert Root. Did you commit that offense?

**DEFENDANT:** Yes.

12

**THE COURT:** And as to the charge of leaving the scene of a collision resulting in death, again, on the same day, November 7th of last year, again in Sussex County, State of Delaware, you, being the driver of a vehicle involved in a collision resulting in death to Robert Root, did fail to immediately stop at the scene of such collision and provide your name, address, registration, driver's license, to the person that you struck. Did you commit that offense?

**DEFENDANT:** Yes.

**THE COURT:** Is anybody forcing you to enter into this plea today?

**DEFENDANT:** No.

**THE COURT:** This is how you want to resolve the case today?

**DEFENDANT:** Yes.

**THE COURT:** I'll find your pleas made knowingly, intelligently, and voluntarily. Judgment of conviction will be entered against you. A presentence investigation will be ordered.[33]

\*\*\*

---

[33] *Id.* at 3:21-23, 4:1-4, 4:8-23, 6:1-16, 7:12-23, 8:1-14.

Defendant argues his pleas were not made voluntarily due to an error on the TIS Form. The form was marked "no" next to the question "[i]s this an offense which results in the loss of the right to own or possess a deadly weapon?[34] However, right above that Defendant marked "yes" to another question that states, "[d]o you understand that a guilty plea to a felony will cause you to lose your right . . . to own or possess a deadly weapon[?]" During the remand hearing Mr. Whitehead testified that this was a clerical error and is confident Defendant was made aware he would lose the right to own or possess a deadly weapon.[35]

As previously stated, the burden is on Defendant to prove that he did not voluntarily enter into the guilty pleas.[36] However, a defendant's statements to this Court during a plea colloquy are presumed to be truthful.[37] Defendant indicated he understood all the rights he was giving up and adequately discussed the loss of those rights with Mr. Whitehead. Defendant told this Court that it was his intent to resolve the case with the guilty pleas. No one forced Defendant to enter guilty pleas, Defendant made the decision knowing the ramifications including the immigration consequences. The harmless error of checking the wrong box does not render the

---

[34] Defendant pled guilty to Operating a Motor Vehicle Causing Death and Leaving the Scene of a Collision Resulting in Death, the latter being a felony.
[35] Tr. of Evidentiary Hr'g at 29:7-23, 30:1-4, 50:14-23, 51:1-14.
[36] *Somerville*, 703 A.2d at 632.
[37] *Id.*

guilty pleas involuntary. Defendant has failed to demonstrate that the guilty pleas were not entered voluntarily.

### III. Legal Innocence

Defendant now claims he was factually innocent because the victim was walking on the wrong side of the road without a light and he could have asserted a choice of evils defense to avoid the car in front of him. With regard to the charge of Operation of a Vehicle Causing Death, Defendant asserts facts that have not been established and apparently in contravention to what was captured on a dash cam video.[38] However, Defendant admitted his conduct to the police voluntarily, again wanting to take responsibility for his actions. Defendant's admissions formed a basis for his guilty plea. Defendant cannot now reconstruct the events of November 7, 2020, in a lopsided manner claiming legal innocence. This is especially true since Defendant elected not to testify at the remand hearing.

With regard to the charge of Leaving the Scene of a Collision Resulting in Death, the Court agrees with the State that retroactively claiming it was the victim's fault cannot apply to his decision to flee the scene. Defendant has not established legal innocence.

---

[38] The Court has not viewed the video.

15

IV.     Adequate Legal Counsel

Defendant claims Mr. Whitehead was ineffective for two reasons. First, Defendant claims any competent counsel would not have advised him to confess to the crime and instead would have advised Defendant to exercise his right against self-incrimination. Next, Defendant claims Mr. Whitehead was ineffective because he advised Defendant to accept a plea with a presentence investigation which did not benefit Defendant.

A defendant seeking to withdraw a guilty plea for ineffective assistance of counsel pursuant to Superior Court Criminal Rule 32(d) must satisfy the test expressed in *Strickland v. Washington*.[39] Essentially, for Defendant to establish that Mr. Whitehead was ineffective he must show that (a) counsel's actions fell below an objective standard of reasonableness and (b) there exists a reasonable probability that, but for counsel's unprofessional errors, Defendant would have chosen to proceed to trial.[40] The burden of proof is again on Defendant to show that Mr. Whitehead was ineffective.[41]

---

[39] *Strickland v. Washington*, 466 U.S. 668 (1984).
[40] *State v. Schofield*, 2011 WL 882838, at *5 (Del. Super. Mar. 14, 2011); *see also State v. Gunter*, 2009 WL 3765505, at *1 (Del. Super. Nov. 10, 2009) ("A valid claim of ineffective assistance of counsel in a motion to withdraw a guilty plea must include actual assertions of attorney error and resulting prejudice – a defendant must establish that an attorney's representation did not meet an objective standard of reasonableness and that but for the attorney's errors, the defendant would have elected to have a trial instead of entering a guilty plea.") (citations omitted).
[41] *Schofield*, 2011 WL 882838, at *5.

16

Defendant's current counsel is essentially "Monday morning quarterbacking" by arguing the decisions Mr. Whitehead and Defendant made together were wrong. Once again, Defendant sought to accomplish two things by turning himself in to the police. First, he wanted to take responsibility for his actions. Second, he wanted to make sure his family member who owned the car did not get in trouble. Defendant made this decision after Mr. Whitehead advised him that he did not have to turn himself into the police.

Additionally, Mr. Whitehead testified that it his practice to advise clients of immigration consequences and is confident he advised Defendant of same. This is evidenced by the plea colloquy where Mr. Whitehead advised the Court and Defendant there could be plea consequences before the plea was entered.

Further, Defendant's statements regarding Mr. Whitehead's representation during the colloquy must be noted:

> **THE COURT:** Have you had plenty of time to talk to Mr. Whitehead about this case?
>
> **DEFENDANT:** Yes.
>
> **THE COURT:** And are you satisfied with his representation of you?

17

**DEFENDANT:** Yes.[42]

Defendant now argues that his current attorney, Mr. Gill, would have advised him differently and therefore Mr. Whitehead was ineffective. It is important to note that Defendant chose to turn himself in to do the right thing and credit is afforded to him for taking early responsibility for his actions. With that choice being made, Defendant went to Mr. Whitehead with an intent to do the right thing for his family and society. Included in Mr. Whitehead's counsel to Defendant was potential penalties, immigration consequences, and loss of rights. Defendant knew all he was facing and still proceeded with the plea. There was no evidence elicited from Defendant or any other witness demonstrating Mr. Whitehead failed to advise Defendant properly.

Again, Defendant's answers during the plea colloquy were presumed to be truthful and no evidence was offered to the contrary. Defendant advised he had enough time to speak with Mr. Whitehead, was satisfied with Mr. Whitehead's representation of him, and he wished to conclude the matter with guilty pleas. Defendant is unable to produce any evidence showing Mr. Whitehead's counsel fell below an objective level of reasonableness, and, but for Mr. Whitehead's alleged ineffectiveness, that Defendant would have instead proceeded to trial.

---

[42] Tr. of Plea Colloquy at 7:6-11.

## V.    Prejudice to State & Court Inconvenience

Both the State and the Court will likely be prejudiced by allowing Defendant to withdraw his guilty plea. The Court takes notice of the victim's family being present for Defendant's guilty plea. If the Court were to allow withdrawal of the plea, the victim's family would experience further emotional turmoil. Also, the Court would have to expend judicial resources.

Finally, although the State has established prejudice, it "need not show . . . prejudice when a defendant has failed to demonstrate that the other factors support a withdrawal of the plea."[43] Here, Defendant has failed to demonstrate any fair and just reason for withdrawal of his guilty plea.

## CONCLUSION

The Defendant's Motion to Withdraw Guilty Pleas is **DENIED.** The Defendant has not established a fair and just reason to permit withdrawal of the plea.

**IT IS SO ORDERED.**

/s/ Mark H. Conner
Judge Mark H. Conner


cc: Prothonotary

---

[43] *State v. Barksdale*, 2015 WL 5676895, at *6 (Del. Super. Sept. 14, 2015) (citations omitted).

19